UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ERIC RAVERTY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>  Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Case No. 4:12-cv-4109-SLD |

ORDER

Plaintiff Eric T. Raverty requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). This matter comes before the Court on the Plaintiff's Motion for Summary Judgment, ECF No. 11, and the Defendant's Motion for Summary Affirmance, ECF No. 19. For the following reasons the Court GRANTS the Commissioner's Motion for Summary Affirmance and DENIES Plaintiff's Motion for Summary Judgment.

BACKGROUND

I. Facts

Eric Raverty was 34 years old when he filed for DIB. *See* R. 193. He has a high school education, R. 223, and has previously worked as a grocery store assistant manager, cashier, delivery truck driver, and cook, R. 218. Until he filed for DIB, Raverty earned approximately

1

$33,000 per year in his grocery store managerial job. R. 218. The Claimant states that he had to resign from his job due to his medical conditions. R. 85.

## II. Procedural History

Raverty filed a claim for a Period of Disability and Disability Insurance Benefits on June 17, 2009, alleging that his disability began on November 16, 2008. R. 191–99. On his application Raverty claimed that his ability to work was limited by congestive heart failure, extreme shortness of breath, fluid retention, anxiety, and secondary depression. R. 217. His application was initially denied on August 31, 2009. R. 127–32. Raverty asked the Social Security Administration to reconsider his application and was denied a second time on February 5, 2010. R. 137–41. He requested a hearing, which was held via video conference on June 2, 2011, with Administrative Law Judge David W. Thompson ("ALJ"). R. 79–122. ALJ Thompson found that Raverty had three severe impairments: dilated cardiomyopathy, moderate/severe left ventricular dysfunction, and obesity. R. 61. Despite these severe impairments, the ALJ also found that Raverty retained the Residual Functional Capacity (RFC) to perform sedentary work except that he may only occasionally stoop, crouch, crawl, kneel, and climb ramps or stairs. R. 62. The RFC also includes the restriction that Raverty cannot climb ladders, ropes, or scaffolds and he must avoid environmental factors such as concentrated exposure to extreme heat, extreme cold, dusts, odors, gases, fumes, and unprotected heights. *Id.* Based on the testimony of a vocational expert, ALJ Thompson found that there were a significant number of jobs in the local and national economy that Raverty could perform. R. 65–66. As a result of this analysis, the ALJ found that Raverty was not disabled between November 16, 2008, and July 26, 2011. R. 67. On March 2, 2012, the Appeals Council denied Raverty's request for review, making the ALJ's decision final. R. 27–29. Raverty filed the present action on

November 16, 2012, requesting judicial review of the ALJ's decision pursuant to 42 U.S.C. 405(g).

## LEGAL FRAMEWORK

### I. District Court Review of the ALJ Decision

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). To determine whether substantial evidence exists, the court reviews the record as a whole but does not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Even if reasonable minds could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted). Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning." *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d

683, 689 (7th Cir. 1999)). The ALJ has a duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010); *Scott*, 297 F.3d at 595. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)). If there is an error of law, "reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

## II. Entitlement to Benefits

In order to be entitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"), a claimant must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the claimant must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142,

143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the claimant:

1) Has not, during the relevant time period, performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2 or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the claimant is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 requires the ALJ to proceed to step 4, where the ALJ will make a finding about the claimant's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC "measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied." *Bowen v. New York*, 476 U.S. 467, 471 (1986) (citing 20 CFR §§ 404.1520(e); 416.920(e)). If, on the other hand, the claimant cannot perform his past relevant work, then the RFC is used in step 5 to determine whether the plaintiff can adjust to other work. 20 C.F.R. § 404.1520(e).

The claimant has the burden of production and persuasion at steps 1 through 4. But once the claimant shows an inability to perform past work (step 4), the burden shifts to the

Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

## DISCUSSION

Raverty argues that the ALJ erred in three respects: by improperly rejecting multiple treating source opinions without articulating his reasoning, by using boilerplate language in his credibility analysis, and by failing to have a psychologist or psychiatrist review the record.

### I. Weighing Medical Opinions

At step two of the disability analysis, an ALJ must determine which of a claimant's impairments, singly or in combination, are medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). ALJ Thompson determined that Raverty had the following severe impairments: dilated cardiomyopathy, moderate to severe left ventricular dysfunction, and obesity. R. 61. A severe impairment significantly limits the claimant's mental or physical ability to do basic work activities. 20 C.F.R. § 404.1520(c). However, in step three, the ALJ determined that none of Raverty's impairments—alone or in combination—medically equaled the listed impairments found in 20 C.F.R. 404, Subpart P, Appendix 1. R. 61–62. The ALJ reached this conclusion by discussing Raverty's medical history at length, R. 62–66, but Raverty contends that the ALJ failed to properly weigh the opinions of Raverty's treating physicians. Pl.'s Br. 10–15, ECF No. 12. Therefore, Raverty argues, the ALJ's RFC determination was erroneous.

#### A. Standards for Evaluating Medical Opinions

In order to determine a claimant's RFC, an ALJ must determine what weight to give the opinions of his treating physicians. 20 C.F.R. § 404.1527. The general rule is that a treating physician's opinion is entitled to controlling weight if it is supported by medical evidence and is not inconsistent with other evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th

Cir. 2003). This "treating physician rule" is a two-step inquiry that the ALJ must conduct when determining the claimant's RFC if a treating physician's opinion is part of the record. First, the ALJ must determine if the physician's findings are supported by the medical findings and consistent with other substantial evidence on the record. If so, the physician's opinion is given controlling weight. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). On the other hand, if an ALJ determines that a treating physician's opinion does not deserve controlling weight, then the ALJ must consider factors outlined in the regulations to determine what weight it deserves. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Those factors are: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the supportability of the opinion; (4) the consistency of the opinion with the record; (5) the specialization of the treating source; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). If an ALJ does discount a treating physician's medical opinion because it is inconsistent with other evidence in the record he must articulate his reasons for doing so. *Barthelemy v. Barnhart*, 107 F. App'x 689, 693 (7th Cir. 2004); *see* 20 C.F.R. § 404.1527(d)(2).

A treating physician's opinion can be inconsistent with evidence in the record, and therefore undeserving of controlling weight, if it conflicts with the findings of other physicians. *Manley v. Barnhart*, 154 F. App'x 532, 536 (7th Cir. 2005); 20 C.F.R. § 404.1527(d)(2), (5). The Commissioner may call upon consultative physicians in order to counteract a treating physician's potential bias:

> We must keep in mind the biases that a treating physician may bring to the disability evaluation. "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Additionally, we have noted that the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore that a consulting physician's opinion might have the advantages of both impartiality and expertise.

7

*Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (citing *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)).

B. **Analysis**

Raverty claims that the ALJ erred by improperly weighing the opinions of Drs. Goettsch, Lank, and Heroux. Pl.'s Br. 12–13. According to Raverty, even if his treating physicians' opinions are not given controlling weight, they are still entitled to "special deference." Pl.'s Br. 11. However, if a treating physician's opinion is not accorded controlling weight, then the weight it is given is based on the 20 C.F.R. § 404.1527(d)(2) factors. *See Moss*, 555 F.3d at 561. ALJ Thompson discounted Raverty's treating physicians' opinions, citing inconsistent evidence in the record as the reason they were not given controlling weight. Moreover, even though the ALJ did not give Dr. Heroux's opinion "controlling weight," he did give it "great weight" and endorsed Heroux's opinion except for Heroux's limitation on stooping. R. 65.

According to Raverty, the ALJ rejected Dr. Goettsch's assessment "with no explanation at all, other than a FIT [Findings Integrated Template] boilerplate conclusion stating that it was inconsistent with the claimant's clinical profile and treatment record." Pl.'s Br. 12. Raverty does not acknowledge that the ALJ accepted most of Dr. Goettsch's findings, "limiting the claimant to a reduced range of sedentary work with occasional postural and environmental limitations." R. 64. The only portion of Dr. Goettsch's opinion that the ALJ rejected was the conclusion that "the claimant's impairments and symptoms preclude *all* work activity." *Id.* (emphasis added). The ALJ justified not giving controlling weight to Dr. Goettsch's opinion because this part of this opinion was "inconsistent with the claimant's clinical profile and

treatment record." *Id.* The ALJ rejected work limitations from Dr. Lank for the same reasons. *Id.*

The inconsistencies that discredit the work limitations posited by Drs. Goettsch and Lank include findings from other treating physicians that Raverty's heart condition was "reasonably well controlled on medical therapy" and improving from a Class III to a Class II New York Heart Association (NYHA) Functional Capacity rating. *See* R. 64–65. The ALJ also mentions Dr. Heroux's letter to Raverty explaining that he "was too well for heart transplantation" and instead suggesting that Raverty enroll in cardiac rehabilitation and pursue a weight loss program. R. 64. When explaining why a treating physician's opinion is not entitled to controlling weight, the ALJ's duty is to merely "minimally articulate" his reasons. *Skarbek v. Barnhart*, 390 F.3d 500, 503, 105 F. App'x 836, 839 (7th Cir. 2004). By pointing to contradictory, objective medical evidence in the record that is inconsistent with the opinions of treating sources, the ALJ satisfied his duty to be "minimally articulate."

Raverty's medical record was also evaluated by two state consultative physicians, Dr. Bilinsky and Dr. Kenney. R. 541–49; R. 599–606. Contrary to Raverty's assertions, the ALJ did not reject Raverty's treating physicians' opinions "based on lay speculation." Pl.'s Reply Br. 7, ECF No. 22. Plaintiff asserts that "no legitimate physician opinion supports the ALJ's RFC finding in this complex cardiac case," and yet the consultative physicians' reports do exactly that. *Id.* at 6; *see* R. 541–49; R. 599–606. Although the consultative reviewing physicians' opinions are not given the same weight as treating sources, that alone does not make their analysis illegitimate. Ultimately, the ALJ's RFC was appropriate because it relied on the findings from Raverty's treating physicians, Dr. Heroux and Dr. Goettsch, and the state consultative doctors. *See* R. 65.

## II. Credibility Determinations: The ALJ's Boilerplate Language

Raverty also asserts that the case should be remanded due to the ALJ's use of the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 65.

Given the negative treatment this language has received, it is a wonder why ALJs use it at all, since it "implies that the ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue,* 671 F.3d 640, 644 (7th Cir. 2012); *see also Parker v. Astrue,* 597 F.3d 920, 921–22 (7th Cir. 2010). The Seventh Circuit has "derided this sort of boilerplate as inadequate, *by itself*, to support a credibility finding." *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012) (emphasis added). "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013). The standard of review for credibility determinations is highly deferential to ALJs because they have first-hand information about a claimant's credibility. "Because the ALJ is in the best position to observe the demeanor of witnesses, we will not disturb the ALJ's credibility determinations so long as they find some support in the record and are not 'patently wrong.'" *Griffith v. Callahan*, 138 F.3d 1150, 1152 (7th Cir. 1998) (overturned on other grounds) (quoting *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)); *see also Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("Reviewing courts . . .

should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported.").

Here, as required by SSR 96-7p, the ALJ supported his credibility determination with evidence from the record. The ALJ noted that Raverty's heart failure was "reasonably well controlled on medical therapy." R. 65. The ALJ also noted that Raverty's heart condition improved from a NYHA classification system rating of Class III, Stage C to a Class II. R. 63–64; *see Richison*, 462 F. App'x at 625–26 (upholding an ALJ's adverse credibility determination when objective medical evidence showed improvement in the Plaintiff's condition with no corresponding improvement in symptoms). Plaintiff contends that the ALJ did not consider Raverty's work history, Pl.'s Br. 17–18, however, the ALJ recited Raverty's work history in his decision, R. 62. Although the ALJ could have cited additional inconsistencies between Raverty's hearing testimony and the record of his alleged symptoms, the ALJ gave sufficient reasons to support his credibility determination, and the Court will not second guess the ALJ's opinion under this highly deferential standard. The ALJ's use of boilerplate language here is more akin to a summarizing statement than a credibility determination itself. The Court finds that the ALJ provided sufficient evidence for concluding that Raverty's statements concerning the onset, nature, intensity and duration of symptoms, as well as the precipitating and aggravating factors, were not credible. Therefore, the Court finds that the ALJ's use of boilerplate language to communicate his determination of Raverty's credibility was not patently erroneous.

### III. Accounting for Psychological Conditions

Part of the application for DIB asks, "How do your illnesses, injuries, or conditions limit your ability to work?" R. 217. Raverty responded in part with the bare statement that,

"Claimant suffers from anxiety and secondary depression." *Id.* Based on Raverty's claim of depression in his DIB application and two treatment notes speculating about his mental state, he contends that "there cannot be any dispute that there was an issue of mental impairment in this case . . . which required [the ALJ] to have a qualified mental health professional evaluate the evidence of a mental impairment, perform a PRT [Psychiatric Review Technique] analysis,[1] and offer an opinion as to listings equivalency." Pl.'s Br. 20. The ALJ's decision does not address whether Raverty's claimed depression is a severe impairment.

However, a claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a). Raverty "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *see also Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) ("It is the claimant [ . . . ] who bears the responsibility of providing medical evidence of a mental impairment."). A claimant must establish an impairment by "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Psychiatric signs are "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

When there is evidence that indicates the existence of a mental impairment, the Commissioner must make "every reasonable effort to ensure that a qualified psychiatrist or

---

[1] This Circuit has explained that the Social Security regulations have been amended to "eliminate the requirement of a standard document." *Burke v. Astrue*, 306 Fed. App'x 312, 315 (7th Cir. 2009). "Instead of completing a PRTF [PRT Form], the ALJ only has to document use of the 'special technique' set forth in 20 C.F.R. § 416.920a." *Id.* Even then, failing to perform the "special technique" is sometimes harmless error. *Pepper*, 712 F.3d at 367.

psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h). But where the evidence of a mental impairment is "sparse," an ALJ does not commit reversible error by failing to consider it. *Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir. 2008) (finding the evidence "sparse" where it consisted only of a doctor's note that "physical pain caused [the claimant] anxiety and adjustment problems" and the claimant had a prescription for anti-depressants). "[I]f a claimant is telling a tall tale, or offers no corroboration for his story [. . . ], the ALJ need not even start the psychological examination process." *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993).

In a case similar to Raverty's, the court ruled that "[t]he ALJ has a duty to present a complete record, but he is under no obligation to compel a consultative psychological examination if no medical evidence in the record supports the claimant's contention that he suffers from a medical impairment." *Young v. Astrue*, 2010 U.S. Dist. LEXIS 63032, 20 (C.D. Ill. June 23, 2010) (holding that ALJ did not err despite failing to order a consultative psychological evaluation even though the record contained observations from a doctor that the plaintiff was a "borderline eccentric individual," a "recluse," had an "anxiety state," and a "personality disturbance."). *Id.* at 21. In *Young*, the court stated, "Since [the plaintiff] presented no medically objective evidence that he suffered from a medically determinable mental impairment, the ALJ did not err by failing to order a consultative neuropsychological examination." *Id.* at 22.

Despite Raverty's claim of depression, the record on any mental impairment is exceedingly sparse. As the Commissioner points out, Raverty provides nine citations to the record for evidence of his supposed depression, but these nine citations actually correspond to only two treatment notes. Def.'s Br. 15, n. 6. In one instance, Raverty was being examined for

13

shortness of breath by a cardiologist—not his primary cardiologist, nor his primary care physician—and the doctor noted, "The patient seems to be depressed." R. 300. The note is not accompanied by a formal diagnosis of depression, referral for treatment or testing, or any further discussion of depression.

The second and only other mention of depression stemmed from a clinical social worker's assessment of Raverty for a possible heart transplant. The assessment reported that "[t]he patient denies any psychiatric history, but seems to be experiencing some illness related depression at this time." R. 496. The suggestion of depression appears to have been made by Raverty's wife. R. 495 Like the first mention of depression, this assessment was not accompanied by a formal diagnosis of depression, referral for treatment or testing, or any further discussion of depression.

After reviewing the entire record, the Court is satisfied that the ALJ was not required to order a psychiatric consultation because there is so little in the record to indicate that Raverty had any sort of mental impairment. Despite frequent contact with healthcare providers, Raverty produced no evidence that he ever sought treatment, or any other kind of help, for depression. Furthermore, the ALJ received no evidence that Raverty's ability to work is impaired by depression. Raverty produced no evidence of a physician placing a depression-related restriction on his ability to work. The ALJ evaluates the physical and mental impairments that the claimant establishes with determinable medical evidence. *See* 20 C.F.R. §§ 404.1520, 416.920; *McNeil*, 614 F.2d at 143. Here there is scant evidence of a mental impairment and substantial evidence supports the ALJ's determination that Raverty is not disabled.

## CONCLUSION

The Commissioner's Motion for Summary Affirmance, ECF No. 19, is GRANTED, and Raverty's Motion for Summary Judgment, ECF No. 11, is DENIED.

Entered this 27th day of March, 2014.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE